TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Steven S. Flores
Lauren L. Peacock

*Counsel to James S. Feltman,*
 *Not Individually But Solely in His Capacity*
 *as Chapter 11 Trustee of Corporate Resource*
 *Services, Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| CORPORATE RESOURCE SERVICES, INC., *et al.*,[1] | : | Case No. 15-12329 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

---------------------------------------------------------------- x

| | | |
|---|---|---|
| JAMES S. FELTMAN, Not Individually But Solely in His Capacity as Chapter 11 Trustee of the Estate of Corporate Resource Services, Inc., *et al.*, | : | Adv. Pro. No. 16-_____ (MG) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STAFF MANAGEMENT GROUP LLC and STAFF HOLDING GROUP, LLC f/k/a STAFF MANAGEMENT GROUP, LLC, | : | |
| | : | |
| Defendants. | : | |

--------------------------------------------------------------

### COMPLAINT

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  (1) Corporate Resource Services, Inc. (1965); (2) Accountabilities, Inc. (5619); (3) Corporate Resource Development Inc. (1966); (4) Diamond Staffing Services, Inc. (7952); (5) Insurance Overload Services, Inc. (9798); (6) Integrated Consulting Services, Inc. (2385); (7) The CRS Group, Inc. (1458);  and (8) TS Staffing Services, Inc. (8647).

James S. Feltman, not individually but solely in his capacity as chapter 11 trustee (the "Plaintiff" or "Trustee") for the above-captioned debtors (the "Debtors"), by his attorneys, Togut, Segal & Segal LLP, as Plaintiff in this adversary proceeding, hereby makes his complaint (the "Complaint") against Staff Management Group LLC and Staff Holding Group, LLC f/k/a Staff Management Group, LLC (collectively, "SMG" or "Defendants"), and in support thereof respectfully alleges upon information and belief:

## SUMMARY OF THE ACTION

In January 2014, debtor Diamond Staffing Services, Inc. ("Diamond Staffing") d/b/a Corporate Resource Services, Inc. ("CRS"), purchased the "Staff Management" name and business from Staff Management Group, LLC[2] for a total of $10 million, $5 million down and half of which was payable in installments over time pursuant to an unsecured note. A year later, unable to pay its many debts as they came due, Diamond Staffing ceased making payments on the note on or about February 1, 2015. By that time, Diamond Staffing had paid a total of approximately $7.1 of the $10 million purchase price for the Staff Management business.

With the nonpayment of this unsecured debt, Staff Management Group, LLC and the people behind it saw an opportunity. It held CRS and Diamond Staffing to be in default on the outstanding approximately $2.9 million that remained due and asked to purchase back the Staff Management business at a steep discount.

Then, on March 9, 2015, just months before these chapter 11 cases were commenced, CRS, on behalf of its wholly-owned subsidiary, Diamond Staffing, agreed

---

[2]    At sometime after consummation of the 2014 transaction, Staff Management Group, LLC changed its name to Staff Holding Group, LLC. This Complaint refers to what is now Staff Holding Group, LLC as "Staff Management Group, LLC" because that was its legal name during the original 2014 transaction.



██████████████.[3]  However, the $2.9 million debt had little to no market value by the time Diamond Staffing's business was transferred back to SMG.  Thus, SMG caused the Staff Management business to be transferred for ████████████████████ ████████████████████████████████.  This consideration was a tiny fraction of what Staff Management Group, LLC sold it for just over a year earlier, despite that it was the same business.

By this Complaint, the Trustee seeks to avoid the 2015 transfer of the Staff Management business and to recover the █████████████████████████ ██████████████████████████████████ ████████████████████.  The difference in value conveyed to the estates is an amount no less than ████████████████████████████.

If SMG can successfully show that paying only ██████████████ ████████████████████████ was reasonable equivalent value, the Trustee alternatively seeks to avoid the $7.1 million of transfers that Diamond Staffing paid to Staff Management Group, LLC to purchase the Staff Management business in the 2014 transaction.  This is because, if the businesses was worth so little, Diamond Staffing paid Staff Management Group, LLC way too much and it did not receive reasonably

---

[3]  The 2014 transaction was between CRD and Staff Management Group, LLC.  The 2015 transaction was between CRD and ████████████████████████████.  Upon information and belief, largely the same entities and/or individuals control Staff Management Group, LLC and Staff Management Group LLC at all relevant times.  By way of example only, Ken Neilson signed the board consent on behalf of the 2014 seller and ████████████████████████████████.  "SMG" refers to both entities.

equivalent value.  In that event, the Trustee seeks an alternative recovery of no ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ .

## THE PARTIES

**Plaintiff**

1.      Plaintiff was appointed as chapter 11 trustee of the above-captioned cases on September 22, 2015 [Dkt. No. 143].

2.      Plaintiff is also chapter 11 trustee of affiliate debtor, TS Employment, Inc. ("TSE") (number 15-10243 (MG)), which is currently pending in this Court.

**The Debtors**

3.      All of the Debtors, except for TS Staffing Services, Inc., are Delaware corporations.  TS Staffing Services, Inc. is a Texas corporation.  The Debtors maintained a principal a place of business at 160 Broadway, 13th Floor, New York, New York 10038.  The Debtors also had other offices nationwide.

4.      Before filing these cases, the Debtors were providers of employment and human resource solutions for corporations.  Beginning in and around February 2015, the Debtors began to wind down their operations and to liquidate a majority of their business assets.

**The Defendants**

5.      Upon information and belief, Staff Holding Group, LLC f/k/a Staff Management Group, LLC is either a New Jersey or Florida limited liability company.

6.      Upon information and belief, Staff Management Group LLC is a Delaware limited liability company.

7.     Upon information and belief, largely the same entities and/or individuals controlled Staff Management Group LLC and Staff Management Group, LLC at all relevant times.

8.     CRS purchased the "Staff Management" name and business, exclusive of accounts receivable, from Staff Management Group, LLC in January 2014.

9.     Just over a year later, on March 9, 2015, Staff Management Group LLC entered into an asset purchase agreement with CRS, for itself and on behalf of its wholly owned subsidiary, Diamond Staffing, to purchase ████████████████ ████████████████████████████████████████████████████████.

10.    Upon information and belief, Staff Management Group LLC was created on or about March 4, 2015 for the purpose of entering into the March 9, 2015 asset purchase agreement.

**PROCEDURAL BACKGROUND**

11.    On July 23, 2015, the Debtors filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware (the "Petition Date"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

12.    On August 18, 2015, this Court entered its *Order Granting Motion to Transfer Venue of Affiliate Cases from Delaware to New York* [TSE Dkt. No. 146].[4]

13.    On September 10, 2015, this Court entered its *Order Directing the Appointment of a Chapter 11 Trustee* [Dkt. No. 137].  On September 22, 2015, James S.

---

[4]   References to "Dkt. No. ___" refer to the chapter 11 cases of CRS (the "CRS Cases"), case no. 15-12329(MG).  References to "TSE Dkt. No. ___" refer to the chapter 11 case of TSE, case no. 15-10243 (MG).

Feltman was appointed as chapter 11 trustee of the above captioned cases [Dkt. No.

143], and this Court entered its *Order Approving the Appointment of the Chapter 11 Trustee*

[Dkt. No. 148] on September 25, 2015.  On October 1, 2015, the Trustee filed his

*Acceptance of Appointment Pursuant to Bankruptcy Rule 2008* [Dkt. No. 149].

14.     On December 16, 2015, the Trustee, pursuant to Bankruptcy Rule

2004, subpoenaed documents from SMG regarding the Debtors' assets and the 2014 and

2015 sales of the Staff Management business.

15.     In response, SMG produced approximately 5,000 pages of

documents.[5]

16.     Certain of those documents and the Debtors' books and records

form the basis for this Complaint.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this adversary proceeding

pursuant to 28 U.S.C. §§ 157 and 1334.  This action is commenced pursuant to 11 U.S.C.

§§ 502, 548, and 550 of the United States Code (the "Bankruptcy Code") and Bankruptcy

Rule 7001.

18.     This adversary proceeding is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(A), (B), (H), and (O), such that this Court has jurisdiction to hear

and to determine this proceeding and to enter an appropriate order and judgment.  In

the event that this or any other appropriate Court finds any part of this adversary

proceeding to be "non-core," this Court has non-core concurrent jurisdiction over this

---

[5]     For the avoidance of doubt, the Trustee reserves his right to seek documents and discovery from
SMG in connection with this adversary proceeding and does not concede that SMG's production
pursuant to the 2004 subpoena is complete.  Moreover, Joseph Cline, who is believed to be an SMG
interestholder, has failed to produce documents despite being served with a subpoena months ago.

proceeding under 28 U.S.C. § 1334 because such causes of action directly relate to the

Debtors' bankruptcy cases and will have significant impact on the Debtors' estates.

19.   Plaintiff consents to the entry of final orders and judgment by this

Court pursuant to Bankruptcy Rule 7008.  Plaintiff also consents to the entry of final

orders or judgments by this Court if it is determined that this Court, absent consent of

the parties, cannot enter final orders on judgments consistent with Article III of the

United States Constitution.

20.   Venue is proper pursuant to 28 U.S.C. § 1409 because this

adversary proceeding arises in and is related to the Debtors' bankruptcy cases pending

in this district.

## FACTUAL ALLEGATIONS

I.   **THE VALUABLE STAFF MANAGEMENT BUSINESS BEFORE MARCH 2015**

21.   When the Debtors operated it, Staff Management was a valuable

business that provided temporary employment and related support services in New

Jersey and Pennsylvania.

**A.  The Staff Management Business is Sold for $10 Million in 2014**

22.   On January 31, 2014, Diamond Staffing and Staff Management

Group, LLC entered into an asset purchase agreement (the "2014 Purchase

Agreement").  Attached as **Exhibit A** is a copy of the 2014 Purchase Agreement without

exhibits.  Attached as **Exhibit B** is a copy of Schedule 1.1 of the 2014 Purchase

Agreement.

23.   Pursuant to the 2014 Purchase Agreement, Diamond Staffing

d/b/a CRS purchased the "Staff Management" name and substantially all of the Staff

Management business, including:

7

a. all interests of Staff Management Group, LLC in the contracts identified on Schedule 1.1 of the 2014 Purchase Agreement,

b. all leasehold interests of Staff Management Group, LLC relating to the locations set forth on Schedule 1.1(b) of the 2014 Purchase Agreement (the "Locations"),

c. all supplies, equipment, machinery, removable leasehold improvements, and other equipment at those Locations,

d. all rights to trademarks, trade names, and other names used by SMG in connection with the Staff Management business,

e. all computers, software, and other hardware,

f. the Staff Management business as a going concern and all of the goodwill associated with the "Staff Management" name,

g. the right to use any forms, processes, and solutions developed by Staff Management Group, LLC in operating at the Locations,

h. all of Staff Management Group, LLC's municipal, state, and federal franchises, licenses, authorizations, and permits necessary to operate the purchased assets,

i. certain books and records relevant to the Staff Management business,

j. all telephone and facsimile numbers relating the Staff Management business with respect to each Location,

k. all permits and licenses to operate the Staff Management business, as identified on Schedule 1.1(m) of the 2014 Purchase Agreement,

l. all restrictive covenants, catalogues, brochures, art work, photographs, advertising and marketing materials, procedures and operating manuals, guidelines, and forms related to the Staff Management business,

m. the real property security deposits as set forth on Schedule 1.1(o) of the 2014 Purchase Agreement (the "Lease Deposits"), and

n. Staff Management Group, LLC's prepaid assets and deposits as set forth on Schedule 1.1.(p).

24.     Pursuant to the 2014 Purchase Agreement, CRS **did not** purchase outstanding account receivables.

25.     Pursuant to the 2014 Purchase Agreement, the total purchase price for the purchased assets was $10 million in addition to the aggregate value of the Lease Deposits.

26.     Pursuant to the 2014 Purchase Agreement, upon closing, Diamond Staffing paid Staff Management Group, LLC $5 million in cash and promised to pay an additional $5 million pursuant to an unsecured promissory note (the "Note").

27.     Pursuant to the Note, Diamond Staffing agreed to pay the principal amount of $5 million in twenty-four equal monthly installments of $208,333.33 on the first day of each month commencing March 3, 2014.

28.     Pursuant to the Note, it bore no interest until there was an event of default.

29.     CRS, as owner of all of the outstanding capital stock of Diamond Staffing, guaranteed the Note.

30.     According to the Debtors' books and records, as of the Petition Date, CRS had paid approximately $2.1 million on the Note.

**B.  The Debtors Maintain the Value of the Staff Management Business
Before Re-Selling the Staff Management Business Back One Year Later**

31.     After the 2014 sale, Diamond Staffing maintained the value of the Staff Management business.

32.     Prior to the Petition Date, Diamond Staffing had customer relationships with many valuable customers including Continental Terminals, Inc., Excelsior Medical, Glenway Edison, International Cargo Terminations, Merrill Corporation, and more.

33.     Prior to the Petition Date, Staff Management was a robust business for the Debtors.

34.    According to the Debtors' books and records, for the year 2014, the Staff Management business generated approximately $71 million in revenue for the eleven months the business was owned by the Debtors.

35.    According to the Debtors' books and records, in 2014, the Staff Management business had EBITDA of approximately $2.2 million for the eleven months the business was owned by the Debtors.

**C.  Diamond Staffing Was Either Insolvent at the Time of the 2014 Purchase Agreement or Was Rendered Insolvent by Entry Into the 2014 Agreement**

36.    According to the Debtors' books and records, at the time of the 2014 Purchase Agreement, Diamond Staffing relied on loans from its CRS affiliates to meet its financial obligations, including the payment obligations related to the 2014 Purchase Agreement.

37.    Upon information and belief and according to the Debtors' books and records, at the time of the 2014 Purchase Agreement, CRS and its subsidiaries did not and could not pay its debts as they became due.

38.    According to the Debtors' books and records, at the time of the 2014 Purchase Agreement, CRS and its subsidiaries owed approximately $14 million to TS Employment Inc.

39.    Upon information and belief and according to the Debtors' books and records, at the time of the 2014 Purchase Agreement, Diamond Staffing did not and could not pay its debts as they became due.

40.     According to the Debtors' books and records, at the end of fiscal year 2014, Diamond Staffing's total liabilities exceeded its total assets by approximately $12 million.

10

41.     Upon information and belief, the 2014 Purchase Agreement left CRS with an unreasonably small capital in proportion to its capital needs.

42.     Upon information and belief, the 2014 Purchase Agreement left Diamond Staffing with an unreasonably small capital in proportion to its capital needs.

43.     Upon information and belief, CRS and Diamond Staffing were either insolvent at the time of the 2014 Purchase Agreement or were rendered insolvent by the 2014 Purchase Agreement.

## II.    CRS SELLS THE STAFF MANAGEMENT BUSINESS AND CERTAIN RECEIVABLES TO STAFF MANAGEMENT GROUP LLC

44.     In or around February 1, 2015, Diamond Staffing did not pay on the Note.

45.     On February 12, 2015, counsel to Staff Management Group, LLC sent Diamond Staffing a letter asserting that Diamond Staffing had defaulted on the Note.

46.     Shortly thereafter, Staff Management Group, LLC expressed an interest in purchasing the Staff Management business back from CRS.

47.     Staff Management Group, LLC also sought to purchase certain Staff Management outstanding receivables from CRS.

48.     By in or around February 18, 2015, Staff Management Group, LLC and CRS had reached a deal in principal for the sale of the Staff Management business and certain accounts receivable.

49.     Over the next two weeks, Staff Management Group, LLC and CRS negotiated the final terms of the sale.

50.     During these negotiations, Staff Management Group, LLC was aware that CRS could not pay its debts as they came due.

51.     During these negotiations, Staff Management Group, LLC was aware that Diamond Staffing could not pay its debts as they came due.

52.     During these negotiations, Staff Management Group, LLC was aware that CRS was at risk of filing for chapter 11 protection.

53.     During these negotiations, Staff Management Group, LLC was aware that Diamond Staffing was at risk of filing for chapter 11 protection.

54.     Upon information and belief, the Debtors did not market the Staff Management business or its outstanding receivables prior to entering into the deal in principal in or around February 18, 2015.

55.     Upon information and belief, the Debtors did not market the Staff Management or its outstanding receivables prior to entering into the asset purchase agreement on or about March 9, 2015.

56.     On or about March 4, 2015, Staff Management Group LLC was formed for the purposes of reacquiring the Staff Management business.

57.     Upon information and belief, Staff Management Group LLC was controlled at least in large part by the same entities and/or individuals as Staff Management Group, LLC during all relevant times.

58.     At the time of its formation, Staff Management Group LLC was aware that CRS and Diamond Staffing could not pay its debts as they came due.

59.     At the time of its formation, Staff Management Group LLC was aware that CRS and Diamond Staffing were at risk of filing chapter 11 protection.

**A. CRS Sells the Staff Management Business Back for Insufficient Value**

60.     On or about March 9, 2015, Staff Management Group LLC and CRS, on behalf of Diamond Staffing, entered into an asset purchase agreement (the "2015

Purchase Agreement," together with the 2014 Purchase Agreement, the "Purchase Agreements").  Attached as **Exhibit C** is a copy of the 2015 Purchase Agreement.[6]

61.   ███████████████████████████████████████████, Staff Management Group, LLC and/or its controlling people negotiated the 2015 Purchase Agreement.

62.   ████████████████████████████████████████████████████ ████████████████████████████████████████████.

63.   By way of example, pursuant to the 2015 Purchase Agreement, Staff Management Group, LLC ██████████████████████████.

64.   █████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████.

65.   Pursuant to the 2015 Purchase Agreement, ██████████████ ████████████████████████████████████████████████ ████████████████████████.

66.   █████████████████████████████████████████████ █████████████████████████████████.

67.   Upon information and belief and pursuant to the Debtors' books and records, █████████████████████████, Staff Management Group LLC also purchased ██████████████████████.

---

[6]   Due to a confidentiality provision therein, out of an abundance of caution, the Trustee has requested the Court's permission to file the 2015 Purchase Agreement under seal and to redact portions of the Complaint that refer to the content of the 2015 Purchase Agreement.

68. ███████████████████████████████

██████████████████████████████████████████████:

██████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████████████

███████████████████████████

██████████████████████████████

███████████████████████████████████████████

69.    Pursuant to the 2015 Purchase Agreement, ████████████████

████████████████████████████████████████████

██████████████████████████████████████

███████████.

70.    Pursuant to the 2015 Purchase Agreement, ████████████████

███████████████████████████████████████████

████████████.

71.    Upon information and belief, Staff Management Group, LLC also benefited from the 2015 Purchase Agreement.

**B.  CRS Receives Less Than Reasonably Equivalent Value for the 2015 Sale**

72.    Pursuant to the 2015 Purchase Agreement, ████████████████

████████████████████████████████████████

████████████████:



73.    Pursuant to the 2015 Purchase Agreement, ███████████

████████████████████████████████████████████████████████

███████████.

74.    Pursuant to the 2015 Purchase Agreement, ████████████

██████████████████████████████████████████████████████

███████████████████████████████.

75.    Approximately $2.9 million was due under the Note as of the Closing Date.

76.    The $2.9 million debt had little to no market value as of the Closing Date.

77.    Pursuant to the 2015 Purchase Agreement, ███████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████.

78.    Pursuant to the 2015 Purchase Agreement, ███████████

█████████████████:



79.     Pursuant to the Purchase Agreements, ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ .

80.     Pursuant to the Purchase Agreements, a summary comparing the

Staff Management business that was sold in 2014 and 2015 is below:

| What CRS Bought in 2014 | What CRS Sold in 2015 |
|---|---|
| All rights to the "Staff Management" name | ██████████████████ |
| The Staff Management business at and leases for the following offices:<br>• 811 Elizabeth Avenue, Elizabeth NJ<br>• 172 New Street, New Brunswick, NJ<br>• 47 Cianci Street, Paterson, NJ<br>• 332 State Street, Perth Amboy, NJ<br>• 1086 South Braod Street, Trenton, NJ<br>• 83A Bassett Highway, Dover, NJ<br>• 910 Summit Avenue, Unit 101, Union City, NJ<br>• 383 Walnut Street, Newark, NJ<br>• 117A Watchung Avenue, Plainfield, NJ | ██████████████████ |
| Substantially all customer relationships and contracts of the Staff Management business (as set forth in the schedules to the 2014 Purchase Agreement) | ██████████████████ |

| | |
|---|---|
| The supplies, equipment, machinery, removable leasehold improvements, office future, computing and telecommunications equipment, including software, hardware, and databases, spare parts, supplies, fixtures and all other tangible personal property valued in excess of $2,000 at the above offices | ███████████████████ |
| All copyrights and rights to trademarks, services marks, trade names, trade dress, domain names, and other names used in connection with the business at the above offices, to the extent transferable | ███████████████████ |
| All municipal, state and federal franchises, licenses, authorizations and permits necessary to operate or related to the purchased assets | ███████████████████ |

81.     Pursuant to the 2014 Purchase Agreement, the Staff Management business was sold for $10 million in January 2014.

82.     The Staff Management business had substantially the same monthly revenue (approximately $6.5 million) in March 2015 at the time of the 2015 Purchase Agreement as it did in January 2014 at time of the 2014 Purchase Agreement.

83.     Accordingly, the Staff Management business that was sold ████ ████████████████████████████████████████ .

84.     Pursuant to the 2015 Purchase Agreement, ████████████ ███████████████████████████████████████████████ ███████████████████████ .

85.     The approximately $2.9 million in outstanding debt due under the Note was not secured.

86.     Neither Diamond Staffing nor CRS retained access to cash in order to satisfy the monthly obligation of the Note.

87.     Under the 2015 Purchase Agreement, ███████████████
████████████████████████████████████████████████.

88.     Diamond Staffing was insolvent at the time of the 2015 Purchase Agreement.

89.     CRS was also insolvent at the time of the 2015 Purchase Agreement.

90.     Accordingly, the unsecured Note had little to no market value at the time of the 2015 Purchase Agreement.

91.     CRS and its creditors did not receive reasonably equivalent value under the 2015 Purchase Agreement.

**C. CRS and Diamond Staffing Were Either Insolvent at the Time of the 2015 Purchase Agreement or Were Rendered Insolvent by the 2015 Agreement**

92.     Upon information and belief, in early 2015, the Debtors began to wind down their businesses and liquidate their business assets.

93.     Upon information and belief and according to the Debtors' books and records, at the time of the 2015 Purchase Agreement, CRS did not and could not pay its debts as they became due.

94.     Upon information and belief and according to the Debtors' books and records, at the time of the 2015 Purchase Agreement, Diamond Staffing did not and could not pay its debts as they became due.

95.     According to the Debtors' books and records, at the end of fiscal year 2014, CRS's total liabilities exceeded its total assets by approximately $8.3 million.

96.     According to the Debtors' books and records, at the end of fiscal year 2014, Diamond Staffing's total liabilities exceeded its total assets by approximately $12.4 million.

97.     Upon information and belief and according to the Debtors' books and records, CRS was insolvent on a balance sheet basis on the Closing Date.

98.     Upon information and belief and according to the Debtors' books and records, Diamond Staffing was insolvent on a balance sheet basis on the Closing Date.

99.     Upon information and belief, the 2015 Purchase Agreement left CRS with an unreasonably small capital in proportion to its capital needs.

100.    Upon information and belief, the 2015 Purchase Agreement left Diamond Staffing with an unreasonably small capital in proportion to its capital needs.

101.    CRS and Diamond Staffing filed voluntary chapter 11 petitions on July 23, 2015, along with other related CRS entities, less than six months after the Closing Date.

102.    Upon information and belief, CRS and Diamond Staffing were either insolvent at the time of the 2015 Purchase Agreement or were rendered insolvent by the 2015 Purchase Agreement.

## FIRST CAUSE OF ACTION
**(Avoidance and Recovery of Constructive Fraudulent Transfers and Obligations Under Bankruptcy Code Sections 548(a) and 550(a) –**
**2015 Sale of Staff Management Business – Against All Defendants)**

103.    Plaintiff repeats and re-alleges paragraphs 1 through 102 of this Complaint as though set forth herein.

104.    Upon information and belief, beginning February 2015, Staff Management Group, LLC negotiated the buy back of the Staff Management business.

105.    On March 9, 2015, CRS transferred ███████████████████ ███████████████████████████████████████████ under the 2015 Purchase Agreement (collectively, the "2015 Staff Management Sale").

106.    ██████████████████████████████████████████████
████████████████████████████████████████.

107.    Upon information and belief, Staff Management Group LLC is dominated and controlled by largely the same entities and/or individuals as Staff Management Group, LLC.

108.    Accordingly, upon information and belief, ██████████████
████████████████████████████████.

109.    Accordingly, upon information and belief, Staff Management Group, LLC benefited from the 2015 Staff Management Sale.

110.    The 2015 Staff Management Sale closed less than two years before the Petition Date.

111.    Based upon the Debtors' books and records, CRS was insolvent when it entered into the 2015 Purchase Agreement or was rendered insolvent by the 2015 Staff Management Sale as a result of the transfer of substantially all of the Staff Management business and the most valuable Staff Management receivables to Defendants.

112.    Based upon the Debtors' books and records, Diamond Staffing was insolvent when it entered into the 2015 Purchase Agreement or was rendered insolvent by the 2015 Staff Management Sale as a result of the transfer of substantially all of the Staff Management business and the most valuable Staff Management accounts receivables to Defendants.

113.    Pursuant to the 2015 Purchase Agreement, ██████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████.

114.    At the time of the 2015 Purchase Agreement, approximately $2.9 was due on the unsecured Note.

115.    At the time of the 2015 Purchase Agreement, the unsecured Note had little to no market value.

116.    Based upon the Debtors, books and records, as of the Closing Date,



117.    The 2015 Purchase Agreement also conveyed ██████████████.

118.    As of the Closing Date, ████████████████

██████████████████████.

119.    Based on the Debtors' books and records, ██████████████

████████████████ at the Closing Date ██████████

██████████████████████.

120.    Under the 2015 Purchase Agreement, ██████████████

██████████████████████████████

██████████████████████████████

████████████████.

121.    Upon information and belief, CRS and its creditors did not receive reasonably equivalent value for the 2015 Staff Management Sale.

122.    Upon information and belief, Diamond Staffing and its creditors did not receive reasonably equivalent value for the 2015 Staff Management Sale.

123.    The 2015 Staff Management Sale constituted a fraudulent transfer under Bankruptcy Code § 548.

124.    Upon information and belief, Defendants were the initial and/or immediate or mediate transferees or beneficiaries of the 2015 Staff Management Sale.

125.    Plaintiff seeks a judgment avoiding the 2015 Staff Management Sale for the benefit of the CRS and Diamond Staffing estates and directing the Defendants to return the assets transferred in the 2015 Staff Management Sale, or the amount to be determined as the difference in value conferred to the estates to date, in an amount not less than $6.85 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding.

### SECOND CAUSE OF ACTION FOR RELIEF
**(Avoidance and Recovery of Constructively Fraudulent Transfer
Under 11 U.S.C. §§ 544(b) and 550 and
New York Debtor and Creditor Law §§ 273, 278, and/or 279 –
2015 Sale of Staff Management Business – Against All Defendants)**

126.    Plaintiff repeats and realleges paragraphs 1 through 125 of this Complaint as though fully set forth therein.

127.    CRS and Diamond Staffing were insolvent when they made the transfers pursuant to the 2015 Staff Management Sale or were rendered insolvent as a result of the 2015 Staff Management Sale.

128.    Upon information and belief, CRS and Diamond Staffing received less than reasonably equivalent value for the transfers conveyed in the 2015 Staff Management Sale.

129.    The 2015 Staff Management Sale constituted a fraudulent conveyance under New York Debtor and Creditor Law § 273.

130.    Upon information and belief, Defendants were the initial and/or immediate or mediate transferees of the 2015 Staff Management Sale.

131.    Upon information and belief, at all times relevant hereto, there were actual creditors of CRS and Diamond Staffing holding matured or unmatured unsecured claims allowable against the estates of CRS and Diamond Staffing, respectively, within the meaning of §§ 502(d) and 544(b) of the Bankruptcy Code.  Those

creditors have the right to void the 2015 Staff Management Sale under applicable law, including, but not limited to, §§ 273, 278, and/or 279 of the New York Debtor and Creditor Law.

132.    By virtue of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy Code and §§ 273, 278, and/or 279 of the New York Debtor and Creditor Law, the 2015 Staff Management Sale should be avoided, recovered, and preserved for the benefit of the estates of CRS and Diamond Staffing.

133.    Plaintiff seeks a judgment avoiding the 2015 Staff Management Sale and directing Defendants to return the amount that was transferred in the 2015 Staff Management sale to the estates of CRS and Diamond Staffing, in an amount not less than $6.85 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding.

### THIRD CAUSE OF ACTION FOR RELIEF
**(Avoidance and Recovery of Constructively Fraudulent Transfer
Under 11 U.S.C. §§ 544(b) and 550 and
New York Debtor and Creditor Law §§ 274, 278, and/or 279 –
2015 Sale of Staff Management Business – Against All Defendants)**

134.    Plaintiff repeats and realleges paragraphs 1 through 133 of this Complaint as though fully set forth therein.

135.    CRS and Diamond Staffing made the transfers pursuant to the 2015 Staff Management Sale when it was engaged or was about to engage in business or a transaction, for which any property remaining after the conveyance was an unreasonably small capital.

136.    The 2015 Staff Management Sale constituted a fraudulent conveyance under New York Debtor and Creditor Law § 274.

137.    Upon information and belief, Defendants were the initial and/or immediate or mediate transferees of the transfers pursuant to the 2015 Staff Management Sale.

138.    Upon information and belief, at all times relevant hereto, there were actual creditors of CRS and Diamond Staffing holding matured or unmatured unsecured claims allowable against the estates of CRS and Diamond Staffing, respectively, within the meaning of §§ 502(d) and 544(b) of the Bankruptcy Code. Those creditors have the right to void the 2015 Staff Management Sale under applicable law, including, but not limited to, §§ 274, 278, and/or 279 of the New York Debtor and Creditor Law.

139.    By virtue of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy Code and §§ 274, 278, and/or 279 of the New York Debtor and Creditor Law, the 2015 Staff Management Sale should be avoided, recovered, and preserved for the benefit of the estates of CRS and Diamond Staffing.

140.    Plaintiff seeks a judgment avoiding the 2015 Staff Management Sale and directing Defendants to return the amount that was transferred in the 2015 Staff Management Sale to the estates of CRS and Diamond Staffing, in an amount not less than $6.85 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding.

**FOURTH CAUSE OF ACTION FOR RELIEF**
**(Avoidance and Recovery of Constructively Fraudulent Transfer**
**Under 11 U.S.C. §§ 544(b) and 550 and**
**New York Debtor and Creditor Law §§ 275, 278, and/or 279 –**
**2015 Sale of Staff Management Business – Against All Defendants)**

141.    Plaintiff repeats and realleges paragraphs 1 through 140 of this Complaint as though fully set forth therein.

142.    CRS and Diamond Staffing made the transfers pursuant to the 2015 Staff Management Sale when it intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

143.    The 2015 Staff Management Sale constituted a fraudulent conveyance under New York Debtor and Creditor Law § 275.

144.    Upon information and belief, at all times relevant hereto, there were actual creditors of CRS and Diamond Staffing holding matured or unmatured unsecured claims allowable against estates of CRS and Diamond Staffing, respectively, within the meaning of §§ 502(d) and 544(b) of the Bankruptcy Code.  Those creditors have the right to void the 2015 Staff Management Sale under applicable law, including, but not limited to, §§ 275, 278, and/or 279 of the New York Debtor and Creditor Law.

145.    By virtue of the foregoing, pursuant to §§ 544(b) and 550 of the Bankruptcy Code and §§ 275, 278, and/or 279 of the New York Debtor and Creditor Law, the 2015 Staff Management Sale should be avoided, recovered, and preserved for the benefit of the Debtor's estate.

146.    Plaintiff seeks a judgment avoiding the 2015 Staff Management Sale and directing Defendants to return the amount that was transferred in the 2015 Staff Management Sale to the estates of CRS and Diamond Staffing, in an amount not less than $6.85 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding.

### FIFTH CAUSE OF ACTION
**(In the Alternative, Avoidance and Recovery of Constructive Fraudulent Transfers and Obligations Under Bankruptcy Code Sections 548(a) and 550(a) –
2014 Sale of Staff Management Business – Against Staff Holding Group, LLC f/k/a Staff Management Group, LLC)**

147.    Plaintiff repeats and re-alleges paragraphs 1 through 146 of this Complaint as though set forth herein.

148.    On January 31, 2014, Staff Management Group, LLC transferred the Staff Management business to Diamond Staffing d/b/a as CRS under the 2014 Purchase Agreement (collectively, the "2014 Staff Management Sale").

149.    To the extent the 2015 Staff Management Sale is not avoidable, then the Trustee alternatively seeks to avoid the 2014 Staff Management Sale as a constructive fraudulent conveyance under Bankruptcy Code § 548.

150.    The 2014 Staff Management Sale closed less than two years before the Petition Date.

151.    Based upon the Debtors' books and records, CRS was insolvent when it entered into the 2014 Purchase Agreement or was rendered insolvent by the 2014 Staff Management Sale as a result of the agreement to pay $10 million for the Staff Management business.

152.    Based upon the Debtors' books and records, Diamond Staffing was insolvent when it entered into the 2014 Purchase Agreement or was rendered insolvent by the 2014 Staff Management Sale as a result of the payment of $5 million in cash and the $5 million Note.

153.    Pursuant to the 2014 Purchase Agreement, Diamond Staffing d/b/a as CRS received substantially all of the Staff Management business in exchange for a payment of $5 million cash and a promise to pay an additional $5 under the Note.

154.    As of the Petition Date, Diamond Staffing had paid approximately $7.1 million for the Staff Management business pursuant to the 2014 Purchase Agreement.

155.    In the 2015 Staff Management Sale, Staff Management Group LLC paid $250,000 in cash and caused approximately $2.9 million due under the unsecured Note to be forgiven in exchange for the Staff Management business.

156.    To the extent the Staff Management business was sold for reasonably equivalent value in 2015, ███████████████████████████████████████████████████████████████████████████████████████████████████.

157.    To the extent the Staff Management business was sold for reasonably equivalent value in 2015, Staff Management Group, LLC received approximately $7.1 million for assets valued at no more than $3.15 million.

158.    To the extent the Staff Management business was sold for reasonably equivalent value in 2015, CRS and Diamond Staffing and their respective creditors only received a fraction of the value of what was conveyed to Staff Management Group, LLC as a result of the 2014 Staff Management Sale.

159.    To the extent the Staff Management business was sold for reasonably equivalent value in 2015, CRS and Diamond Staffing and their respective creditors did not receive reasonably equivalent value for the 2014 Staff Management Sale.

160.    To the extent the Staff Management business was sold for reasonably equivalent value in 2015, the 2014 Staff Management Sale constituted a fraudulent transfer under Bankruptcy Code § 548.

161.    Upon information and belief, Staff Management Group, LLC was the initial and/or immediate or mediate transferee or beneficiary of the approximately $7.1 million conveyed under the 2014 Purchase Agreement.

162.    Plaintiff seeks, in the alternative, a judgment avoiding the 2014 Staff Management Sale for the benefit of the CRS and Diamond Staffing estates and directing Staff Management Group, LLC to return the assets transferred in the 2014 Staff Management Sale, or the amount to be determined as the difference in value conferred

to the estates to date, in an amount not less than $3.95 million, together with interest,

costs, and attorneys' fees incurred in connection with this adversary proceeding.

### SIXTH CAUSE OF ACTION FOR RELIEF
**(In the Alternative, Avoidance and Recovery of Constructively Fraudulent Transfer
Under 11 U.S.C. §§ 544(b) and 550 and
New York Debtor and Creditor Law §§ 273, 278, and/or 279 –
2014 Sale of Staff Management Business – Against Staff Holding Group, LLC f/k/a
Staff Management Group, LLC)**

163.    Plaintiff repeats and realleges paragraphs 1 through 162 of this

Complaint as though fully set forth therein.

164.    To the extent the 2015 Staff Management Sale is not avoidable, then

the Trustee alternatively seeks to avoid the 2014 Staff Management Sale as a

constructive fraudulent conveyance under New York Debtor and Creditor Law § 273.

165.    CRS and Diamond Staffing were insolvent when it made the

transfers pursuant to the 2014 Staff Management Sale or was rendered insolvent as a

result of the 2014 Staff Management Sale.

166.    To the extent the Staff Management business was sold for

reasonably equivalent value in 2015, upon information and belief, CRS and Diamond

Staffing received less than reasonably equivalent value for the $10 million contract price

in the 2014 Purchase Agreement.

167.    To the extent the Staff Management business was sold for

reasonable equivalent value in 2015, CRS and Diamond Staffing received less than

reasonably equivalent value for the approximately $7.1 million conveyed pursuant to

the 2014 Purchase Agreement.

168.    To the extent the 2015 Staff Management Sale is valid and does not

constitute a fraudulent transfer, the 2014 Staff Management Sale constituted a

fraudulent conveyance under New York Debtor and Creditor Law § 273.

169.    Upon information and belief, Staff Management Group, LLC was the initial and/or immediate or mediate transferee of the $5 million conveyed in the 2014 Staff Management Sale.

170.    Upon information and belief, Staff Management Group, LLC was the initial and/or immediate or mediate transferee of the $5 million Note conveyed in the 2014 Staff Management Sale.

171.    Upon information and belief, Staff Management Group, LLC was the initial and/or immediate or mediate transferee of approximately $7.1 million conveyed under the 2014 Purchase Agreement.

172.    Upon information and belief, at all times relevant hereto, there were actual creditors of CRS and Diamond Staffing holding matured or unmatured unsecured claims allowable against the estates of CRS and Diamond Staffing, respectively, within the meaning of § 502(d) and 544(b) of the Bankruptcy Code.  Those creditors have the right to void the 2014 Staff Management Sale under applicable law, including, but not limited to, §§ 273, 278, and/or 279 of the New York Debtor and Creditor Law.

173.    By virtue of the foregoing, to the extent the 2015 Staff Management Sale is valid and does not constitute a fraudulent transfer, pursuant to §§ 544(b) and 550 of the Bankruptcy Code and §§ 273, 278, and/or 279 of the New York Debtor and Creditor Law, the 2014 Staff Management Sale should be avoided, recovered, and preserved for the benefit of the estates of CRS and Diamond Staffing.

174.    Plaintiff seeks, in the alternative, a judgment avoiding the 2014 Staff Management Sale and directing Staff Management Group, LLC to return the amount that was transferred in the 2014 Staff Management sale to the estates of CRS

and Diamond Staffing, in amount not less than $3.95 million, together with interest,

costs, and attorneys' fees incurred in connection with this adversary proceeding.

**SEVENTH CAUSE OF ACTION FOR RELIEF**
**(In the Alternative, Avoidance and Recovery of Constructively Fraudulent Transfer**
**Under 11 U.S.C. §§ 544(b) and 550 and**
**New York Debtor and Creditor Law §§ 274, 278, and/or 279 –**
**2014 Sale of Staff Management Business – Against Staff Holding Group, LLC f/k/a**
**Staff Management Group, LLC)**

175.   Plaintiff repeats and realleges paragraphs 1 through 174 of this

Complaint as though fully set forth therein.

176.   To the extent the 2015 Staff Management Sale is not avoidable, then

the Trustee alternatively seeks to avoid the 2014 Staff Management Sale as a

constructive fraudulent conveyance under New York Debtor and Creditor Law § 274.

177.   CRS and Diamond Staffing made the transfers pursuant to the 2014

Staff Management Sale when they were engaged or were about to engage in business or

a transaction, for which any property remaining after the conveyance was an

unreasonably small capital.

178.   To the extent the 2015 Staff Management Sale is valid and does not

constitute a fraudulent transfer, the 2014 Staff Management Sale constituted a

fraudulent conveyance under New York Debtor and Creditor Law § 274.

179.   Upon information and belief, at all times relevant hereto, there

were actual creditors of CRS and Diamond Staffing holding matured or unmatured

unsecured claims allowable against the estates of CRS and Diamond Staffing,

respectively, within the meaning of 502(d) and 544(b) of the Bankruptcy Code.  Those

creditors have the right to void the 2014 Staff Management Sale under applicable law,

including, but not limited to, sections 274, 278, and/or 279 of the New York Debtor and

Creditor Law.

180.    By virtue of the foregoing, to the extent the 2015 Staff Management Sale is valid and does not constitute fraudulent transfer, pursuant to sections 544(b) and 550 of the Bankruptcy Code and sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, the 2014 Staff Management Sale should be avoided, recovered, and preserved for the benefit of the estates of CRS and Diamond Staffing.

181.    Plaintiff seeks, in the alternative, a judgment avoiding the 2014 Staff Management Sale and directing Staff Management Group, LLC to return the amount that was transferred in the 2014 Staff Management Sale to the estates of CRS and Diamond Staffing, in an amount not less than $3.95 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding.

**EIGHTH CAUSE OF ACTION FOR RELIEF**
**(In the Alternative, Avoidance and Recovery of Constructively Fraudulent Transfer**
**Under 11 U.S.C. §§ 544(b) and 550 and**
**New York Debtor and Creditor Law §§ 275, 278, and/or 279 –**
**2014 Sale of Staff Management Business – Against Staff Holding Group, LLC f/k/a**
**Staff Management Group, LLC)**

182.    Plaintiff repeats and realleges paragraphs 1 through 181 of this Complaint as though fully set forth therein.

183.    To the extent the 2015 Staff Management Sale is not avoidable, then the Trustee alternatively seeks to avoid the 2014 Staff Management Sale as a constructive fraudulent conveyance under New York Debtor and Creditor Law § 275.

184.    CRS and Diamond Staffing made the transfers pursuant to the 2014 Staff Management Sale when it intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

185.    To the extent the 2015 Staff Management Sale is valid and does not constitute a fraudulent transfer, the 2014 Staff Management Sale constituted a fraudulent conveyance under New York Debtor and Creditor Law § 275.

31

186.    Upon information and belief, at all times relevant hereto, there were actual creditors of CRS and Diamond Staffing holding matured or unmatured unsecured claims allowable against estates of CRS and Diamond Staffing, respectively, within the meaning of §§ 502(d) and 544(b) of the Bankruptcy Code.  Those creditors have the right to void the 2014 Staff Management Sale under applicable law, including, but not limited to, §§ 275, 278, and/or 279 of the New York Debtor and Creditor Law.

187.    By virtue of the foregoing, to the extent the 2015 Staff Management Sale is valid and does not constitute a fraudulent transfer, pursuant to §§ 544(b) and 550 of the Bankruptcy Code and §§ 275, 278, and/or 279 of the New York Debtor and Creditor Law, the 2014 Staff Management Sale should be avoided, recovered, and preserved for the benefit of the Debtor's estate.

188.    Plaintiff seeks, in the alternative, a judgment avoiding the 2014 Staff Management Sale and directing Staff Management Group, LLC to return the amount that was transferred in the 2014 Staff Management Sale to the estates of CRS and Diamond Staffing, in an amount not less than $3.95 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding.

## NINTH CAUSE OF ACTION
### (Temporary Disallowance of Bankruptcy Claims – Against all Defendants)

189.    Plaintiff repeats and re-alleges paragraphs 1 through 188 of this Complaint as though set forth herein.

190.    Defendants are transferees of a transfer avoidable under Bankruptcy Code § 548, and Defendants have not paid the amount or turned over such property for which they are liable under Bankruptcy Code § 550.

191.    Pursuant to Bankruptcy Code § 502(d), the claims, if any, which Defendants have or may file in these cases should be disallowed until Defendants have turned over the estate property for which they are liable under the Bankruptcy Code.

## RESERVATION OF RIGHTS

192.    Plaintiff repeats and re-alleges paragraphs 1 through 195 of this Complaint as though set forth herein.

193.    Although the Trustee has received some limited discovery from SMG, the Trustee cannot be certain that production is complete.

194.    Accordingly, the Trustee does not waive and instead specifically reserves all of his rights, claims, and defenses as they pertain to SMG and to defend against any claims or liens that SMG may assert against the CRS estates.  The Trustee expressly reserves the right to amend and supplement this Complaint or to commence a new action against SMG with other claims as his investigation continues.

## PRAYER FOR RELIEF

**WHEREFORE**, the Trustee respectfully requests that this Court enter a judgment as follows:

(i)    avoiding the 2015 Staff Management Sale and directing Defendants to return the amount of the assets transferred in the 2015 Staff Management Sale, or the amount to be determined as the difference in value conferred to the estates to date, in an amount not less than $6.85 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding,

(ii)    alternatively, avoiding the 2014 Staff Management Sale and directing Staff Holding Group, LLC f/k/a Staff Management Group, LLC to return the amount transferred in the 2014 Staff Management Sale, or the amount to be determined as the difference in value conferred to the estates to date, in an amount not less than $3.95 million, together with interest, costs, and attorneys' fees incurred in connection with this adversary proceeding,

(iii)    disallowing any claims that Defendants have or may file in these cases pursuant to Bankruptcy Code § 502(d);

(iv)     granting attorneys' fees and costs;  and

(v)      granting such other relief as the Court deems just and proper.

DATED:  New York, New York
             August 23, 2016

JAMES S. FELTMAN, Not Individually But
Solely in His Capacity as Chapter 11 Trustee of
Corporate Resource Services, Inc., *et al.*
By his attorneys,
TOGUT, SEGAL & SEGAL LLP,
By:

*/s/ Steven S. Flores*
ALBERT TOGUT
STEVEN S. FLORES
LAUREN L. PEACOCK
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000