**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    CORPORATE RESOURCE SERVICES,<br>                    INC., *et al.*,<br><br>                                    Debtors. | FOR PUBLICATION<br><br>Chapter 11<br>Case No. 15-12329 (MG)<br>(Jointly Administered) |
| JAMES S. FELTMAN, Not Individually,<br>But Solely in His Capacity as Chapter 11<br>Trustee of the Estate of Corporate Resource<br>Services, Inc., *et al.*,<br><br>                                    Plaintiff,<br><br>            v.<br><br>STAFF MANAGEMENT GROUP LLC<br>and STAFF HOLDING GROUP LLC f/k/a<br>STAFF MANAGEMENT GROUP, LLC,<br><br>                                  Defendants. | Adv. Pro. No. 16-01199 (MG) |

**MEMORANDUM OPINION REGARDING ORDER GRANTING TRUSTEE'S MOTION
TO DISQUALIFY ROBINSON BROG AND A. MITCHELL GREENE AS
<u>ATTORNEYS FOR DEFENDANTS</u>**

*A P P E A R A N C E S:*

TOGUT, SEGAL & SEGAL LLP
*Attorney for Plaintiff James S. Feltman, Not
Individually, But Solely in His Capacity as
Chapter 11 Trustee of Corporate Resource
Services, Inc., et al.*
One Penn Plaza, Suite 3335
New York, NY 10119
   By:    Steven S. Flores, Esq.
             Luke P. Thara, Esq.

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
*Attorneys for Defendants Staff Management Group LLC and*
*Staff Holding Group LLC*
875 Third Avenue, 9th Floor
New York, NY 10022
By:   Fred B. Ringel, Esq.
         William A. Rome, Esq.
         Nicholas M. Menasché, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Disqualification of counsel is never something to be decided lightly, but disqualification of counsel from representing either defendant in this case highlights the risks when a lawyer lends a substantial sum to, and acquires an equity interest in, his client, in a transaction that is at the heart of the litigation that the lawyer and his firm now seeks to defend. Additionally, documents produced in the litigation show that the lawyer is likely to be called as a witness on a material issue that is likely to be adverse to the client, and the lawyer's testimony will be in his capacity as a lender and investor and not solely as a lawyer in the transaction. Those circumstances led the Court to enter an order disqualifying Robinson Brog Leinwand Greene Genovese & Gluck, P.C. ("Robinson Brog," or the "Firm") and A. Mitchell Greene ("Greene") as attorneys for Staff Management Group LLC ("New SMG") and Staff Holding Group LLC, f/k/a Staff Management Group, LLC ("SMG") (collectively, the "Defendants"), the Defendants in the above-captioned adversary proceeding (the "Adversary Proceeding"). (*See Order Granting Trustee's Motion to Disqualify Robinson Brog and A. Mitchell Greene as Attorneys for Defendants,* ("Disqualification Order," ECF Doc. # 54, dated October 5, 2017.) The order provided that a written opinion further explaining the reasons for the disqualification stated on the record at the hearing would be issued in due course. This Opinion further explains the reasons.

2

James S. Feltman, the chapter 11 trustee (the "Trustee") of Corporate Resource Services, Inc., *et al.*[1] (the "Debtors") filed a motion to disqualify Robinso Brog and Greene as counsel for defendants in this case. ("Motion," ECF Doc. # 67.) The Motion is supported by the Declaration of Luke P. Thara (the "Thara Declaration," ECF Doc. # 68) attaching several exhibits (ECF Doc. ## 68-1–12), including documents produced to the Trustee during discovery in the Adversary Proceeding.

The Motion maintains that, pursuant to Rules 1.8(i), 1.10(a), and 3.7(a) and (b) of the New York Rules of Professional Conduct, Greene and Robinson Brog should be disqualified as attorneys for the Defendants for three independent reasons: (i) Greene holds a proprietary interest in the subject matter of the Adversary Proceeding through his ownership stake in one of the defendants, New SMG, (ii) Greene will likely be called as a witness in the Adversary Proceeding, and (iii) Robinson Brog and Greene's personal connections[2] to the case have caused the attorneys to engage in improper conduct during discovery, including withholding materials supporting the Trustee's claims. (Mot. at 5–6, 8–9.)

The Defendants filed an opposition to the Motion (the "Opposition," ECF Doc. # 64), asserting that Greene's and Robinson Brog's representation of the Defendants does not violate any of the New York Rules of Professional Conduct, and the Motion is a patent attempt by the Trustee to "eliminate any resistance to [the Trustee's] meritless fraudulent conveyance action, by replacing Defendants' attorneys . . . ." (Opp. at 5.)

---

[1] The Debtors in these chapter 11 cases are: (1) Corporate Resource Services, Inc.; (2) Accountabilities, Inc.; (3) Corporate Resource Development, Inc.; (4) Diamond Staffing Services, Inc.; (5) Insurance Overload Services, Inc.; (6) Integrated Consulting Services, Inc.; (7) The CRS Group, Inc.; and (8) TS Staffing Services, Inc.

[2] The Trustee notes that, in addition to holding equity in one of the Defendants, Greene is also personally connected to the Adversary Proceeding because his brother, Eugene Greene, is a principal of New SMG. (Mot. at 5.)

3

Upon careful consideration of the parties' submissions, and the parties' respective arguments during an October 4, 2017 hearing on the Motion, the Court entered an order on October 5, 2017, granting the Motion. (ECF Doc. # 54.) This Opinion explains the basis for the Court's ruling.

As described in greater detail below, the Court finds that the disqualification of Greene and Robinson Brog is warranted because of Greene's role as a lender to, and an investor in, New SMG to facilitate the very transfer on which the Trustee's claims in the Adversary Proceeding hinge. Greene's pecuniary interest in New SMG warrants his disqualification under New York Rule of Professional Conduct 1.8(i), which prohibits a lawyer from obtaining a financial interest in the subject matter of his client's litigation, and Greene's conflict is imputed to Robinson Brog under New York Rule of Professional Conduct 1.10(a). Moreover, since Greene is likely to be called to testify during the Adversary Proceeding concerning the Transfer as a lender and an investor, his and Robinson Brog's disqualifications are also justified under New York Rule of Professional Conduct 3.7(b), which states that a lawyer may not advocate for a client in a court where, as here, another attorney in his firm will likely be called as a witness on a significant issue, and where the testimony may prejudice the client. For these reasons, and those set forth below, the Court granted the Trustee's Motion.

## I. BACKGROUND

### A. Procedural Background

#### 1. The Bankruptcy Cases

Some of the Debtors in these chapter 11 cases filed chapter 11 petitions in the U.S. Bankruptcy Court for the Southern District of New York on February 2, 2015 (the "Petition Date"), and other Debtors thereafter filed chapter 11 petitions in the U.S. Bankruptcy Court for the District of Delaware on July 23, 2015. On August 18, 2015, this Court entered an Order

4

Granting Motion to Transfer Venue of Affiliate Cases from Delaware to New York (Case No. 15-12329, ECF Doc. # 116). The Debtors insolvency proceedings and the appointment of a Chapter 11 Trustee resulted from a major fraud by the Debtors and their principals. Thus, the Trustee and his professionals have undertaken a lengthy investigation of transactions before each of the Debtors filed its bankruptcy petition.

In December 2015 and May 2016, the Trustee, pursuant to Bankruptcy Rule 2004, subpoenaed documents from the Defendants and third parties regarding the Debtors' assets, making broad requests for valuation materials and all documents and communications concerning certain assets purchased from the Debtors, at allegedly bargain prices, before the bankruptcy petitions were filed (the "Rule 2004 Discovery"). (Thara Decl. Exs. 6, 7.) On May 24, 2016, Greene, on behalf of Robinson Brog, filed a notice of appearance in the Debtors' chapter 11 case (Case No. 15-12329, ECF Doc. # 370), and thereafter coordinated responses to the Trustee's discovery requests. (Thara Decl. Ex. 9.)

        2.    *The Adversary Proceeding*

On August 23, 2016, the Trustee brought the Adversary Proceeding against the Defendants asserting causes of action under the Bankruptcy Code for fraudulent transfers and temporary disallowance of bankruptcy claims. (ECF Doc. # 1, the "Adversary Complaint.") The Trustee and the Defendants initially agreed to resolve the Adversary Proceeding through mediation, but the mediation ultimately failed (ECF Doc. # 24 (Report of Mediator)), and the parties commenced fact discovery. On June 30, 2017, Robinson Brog, on behalf of the Defendants and third party Bond Street, LLC ("Bond Street"), began producing documents to the Trustee. (Mot. at 15; Thara Decl. Ex. 10.)

**B.      Events Leading to the Motion**

1.      *The Transfer*

The Adversary Proceeding centers on an allegedly fraudulent transfer between debtor Diamond Staffing Services, Inc. d/b/a Corporate Resource Services, Inc. ("CRS") and the Defendants, based on the following factual allegations. On January 31, 2014 (the "Closing Date"), CRS purchased the "Staff Management" name and business, but not its receivables, from SMG for $10 million, with $5 million in cash paid at the Closing Date, and $5 million in an unsecured note payable over twenty-four months. (Adversary Compl. ¶¶ 22–26.) On March 9, 2015, CRS transferred back its Staff Management business to members of SMG, the original sellers of Staff Management, who retook the business operations through the newly-formed entity, New SMG ("the Transfer"). (*Id.* ¶ 105.) The purchase price of the business operations was $250,000 in cash, and forgiveness of approximately $2.7 million of the unsecured debt that was in default. (Mot. at 12.) According to the Trustee, the inadequate consideration paid for the Transfer represents the sellers' repurchase of the Staff Management business at a bargain-basement price, and the Transfer was fraudulent.

2.      *Greene's Pecuniary Interest in New SMG and Robinson Brog's Conduct During Discovery*

The Trustee did not know of Greene's pecuniary interest in one of the Defendants when this Adversary Proceeding was filed. (Mot. at 7.) Upon review of the document productions during discovery in the Adversary Proceeding, the Trustee learned that in March 2015, before the Closing Date, Greene made a short-term loan of $550,000 to New SMG, and shortly after the Closing Date purchased $250,000 of equity in New SMG. (Thara Decl. Ex. 8.) In addition, according to the Trustee, the productions included numerous previously-unproduced documents that were responsive to the Rule 2004 Discovery, and that support the Trustee's fraudulent

6

transfer claims, including the allegation that the consideration for the Transfer was insufficient. (Mot. at 15.)  The productions included, for example,

1. a summary of the Transfer created eight days before the Closing Date, addressed to Greene and others touting that the assets to be transferred generated approximately $70 million in revenue (Thara Decl. Ex. 1),

2. an admission from a SMG principal four days before the Closing Date, boasting that potential investors in New SMG were paying twenty-cents on the dollar in connection with the Transfer (Thara Decl. Ex. 11), and

3. financial projections describing an estimated value of $10.5 million (Thara Decl. Ex. 8).

In the Motion, the Trustee also claims that during discovery there were numerous "unusual circumstances and inexplicable lapses in [Greene's and Robinson Brog's] judgment." (Mot. at 8.)The Trustee notes that:

- When the Trustee indicated to Greene that the Trustee might commence an adversary proceeding as a result of the Transfer, Greene made written threats to the Trustee with claims that are contradicted by documents the Defendants provided to the Trustee (Mot. at 10);

- Greene recently claimed that he had no documents concerning his pecuniary interest in New SMG (aside from a handful of documents produced by the Defendants), including no checks, no periodic reports and no loan documents (*id.* at 10–11); and

- Robinson Brog refused to provide full details concerning Greene's participation in, and lending relationship with, New SMG (*id.* at 11).

Based on the Trustee's belief that this conduct indicated Robinson Brog's and Greene's personal connection to the facts underlying the Adversary Complaint compromised Greene's and the Firm's exercise of their professional judgment, the Trustee filed the Motion seeking their disqualifications from the case.

7

## II. LEGAL STANDARD

### A. Motion to Disqualify

Federal courts have the discretion to disqualify attorneys for ethical violations, "derive[d] from [federal courts'] inherent power to preserve the integrity of the adversary process." *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 241 (2d Cir. 2016) (internal citation and quotation marks omitted); *see also United States v. Hammad*, 858 F.2d 834, 837 (2d Cir. 1988) (stating that "[t]he federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar"). "In exercising this power, the Court must be solicitous of a client's right freely to choose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession." *Bacote v. Riverbay Corp.*, 2017 WL 945103, at *5 (S.D.N.Y. Mar. 10, 2017) (internal citation and quotation marks omitted). Thus, disqualification is called for only where "an attorney's conduct tends to taint the underlying trial, because federal and state disciplinary mechanisms suffice for other ethical violations." *Id.* (internal citation and quotation marks omitted). Courts considering disqualification motions "often benefit from guidance offered by . . . state disciplinary rules, [but] such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification . . . ." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal citations omitted).

While the Court has discretion to disqualify attorneys for unethical conduct, "motions to disqualify are disfavored" in the Second Circuit. *See, e.g.*, *Lankler, Siffert & Wohl LLP v. Rossi*, 125 Fed. Appx. 371, 372 (2d Cir. 2005) (explaining that "[w]e have made it clear that motions to disqualify are disfavored"). A party seeking disqualification must therefore meet a "high standard of proof" that disqualification of counsel is warranted. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). Disqualification is only justified in the rare circumstance where an

8

attorney's conduct 'poses a significant risk of trial taint.'" *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). Nevertheless, "any doubt [with respect to whether disqualification should be ordered] is to be resolved in favor of disqualification." *Bell v. Ramirez*, 2017 WL 4296781, at *1 (S.D.N.Y. Sept. 26, 2017) (internal citation omitted).

### B. Pecuniary Conflicts—Rule 1.8(i)

New York Rule of Professional Conduct 1.8(i)[3] prohibits counsel from "acquir[ing] a proprietary interest in the cause of action or subject matter of litigation that the lawyer is conducting for a client." 22 N.Y.C.R.R. § 1200, Rule 1.8(i). Comments on Rule 1.8(i) make clear that "a lawyer should not acquire property rights that would adversely affect the lawyer's professional judgment in representing the client." New York State Bar Association, *New York Rules of Professional Conduct With Commentary*, available at http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=5067 (as amended Jan. 1. 2017). The rule reflects a well-established principle in New York predating the New York Rules of Professional Conduct, that it is ethically suspect and generally unwise for attorneys to engage in business relationships with clients. *See Balestriere PLLC v. CMA Trading, Inc.*, 2014 WL 7404068, at *12 n.17 (S.D.N.Y. Dec. 31, 2014) (citing 22 N.Y.C.R.R. § 1200, Rule 1.8(a)). This conflict-of-interest caution is particularly appropriate when the subject of the legal representation overlaps with the business transactions between attorney and client. *Id.*; *see also Sun Forest Corp. v. Shvili,* 152 F. Supp. 2d 367, 394 (S.D.N.Y. 2001) (stating that "New York courts cast a wary eye on business contracts between attorneys and their clients"). Such is the case here.

---

[3] Attorneys arguing in this Court must abide by the New York State Rules of Professional Conduct, 22 N.Y.C.R.R. § 1200, which replaced the old Canons and Disciplinary Rules that were formerly in place in the State of New York. *See* S.D.N.Y. Local Rule 1.3. The New York Rules of Professional Conduct were revised and implemented on April 1, 2009.

While there appears to be scant, if any, case law in this jurisdiction applying and interpreting Rule 1.8(i) to facts similar to those at issue here, cases interpreting the rule's predecessor, Disciplinary Rule 5-103(A), reinforce the principle that a lawyer's pecuniary interest in the subject matter of a litigation justifies the lawyer's disqualification. *See, e.g., Peggy Walz, Inc. v. Lin Wain, Inc.*, 1996 WL 88556, at *2 (S.D.N.Y. Mar. 1, 1996) (disqualifying an attorney who had an incorporation agreement with his client that provided him with an option to loan the client funds and entitled him to 40% of the client's revenues, and noting that "it is obvious that [the attorney] has a significant proprietary interest in this action and the subject matter underlying it"); *Norma Brothers & Manheimer Corp. v. Earl's Fashions, Inc.,* 1984 WL 166, at *2 (S.D.N.Y. Apr. 12, 1983) (applying Disciplinary Rule 5-103(A) to disqualify a lawyer who was an assignee of the accounts receivable on which the litigation was based because he would benefit monetarily from a judgment in favor of his client).

### C.     Imputation of Pecuniary Conflicts—Rule 1.10(a)

Under Rule 1.10(a) of the New York Rules of Professional Conduct, a lawyer's conflict under Rule 1.8(i) is imputed to other lawyers at the law firm where the conflicted lawyer practices. The Rule states that "[w]hile lawyers are associated at a firm, none of them shall knowingly represent a client when one of them doing so practicing alone would be prohibited from doing so by Rule 1.7, 1.8, or 1.9 . . . ." 22 N.Y.C.R.R. § 1200, Rule 1.10(a). According to Rule 1.10(a)'s commentators, the rule is premised on the belief that "a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client" or the premise that "each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *See* New York State Bar Association, *New York Rules of*

*Professional Conduct With Comments*, available at

http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=50671.

    **D.**    **Witness Advocate Rule—Rule 3.7**

Rule 3.7(a) of the New York Rules of Professional Conduct, which codifies the well-established "witness advocate rule," prohibits an attorney from acting "as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." 22 N.Y.C.R.R. 1200, Rule 3.7(a). Rule 3.7(b) goes a step further, and imputes a lawyer-witness's conflict to other lawyers at the lawyer's firm: "[a] lawyer may not act as an advocate before a tribunal" where "another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client" and "it is apparent that the testimony may be prejudicial to the client." *Id.*, Rule 3.7(b).

New York courts have noted that the witness advocate rule lends itself to opportunistic abuse by opposing counsel, and have applied "fairly strict scrutiny" to motions to disqualify under the Rule 3.7, holding that the movant "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Bacote*, 2017 WL 945103, at *6 (citing *Murray v. Metro Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009)). "Prejudice" means testimony that is "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id.* Thus, when the party moving for disqualification intends to call the adversary's attorney as a witness, "the movant must demonstrate both that the lawyer's testimony is necessary and that there exists a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." *Bell*, 2017

11

WL 4296781, at *3 (internal citation and quotation marks omitted).  Here, this Court is loath to require the Trustee to show that Greene's testimony is necessary, as cases applying the "necessary" requirement generally deal with situations in which a lawyer is being called by an adversary as a witness to testify as a lawyer *qua* lawyer, in other words, concerning his knowledge in his capacity as an attorney.  *See, e.g.*, *Paramount Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 398 (S.D.N.Y.1994) (holding that where an attorney's advice to a client was relevant to the suit, disqualification of the attorney in order to allow the attorney to testify regarding that advice was unnecessary where the client could also testify to the advice).  In those instances, the "necessary" requirement insures that a lawyer will not be disqualified merely because he is being called as a witness concerning knowledge about subject matter others can similarly testify about.  But here, the testifying lawyer would be testifying in his capacity as a fact witness (*i.e.*, in his capacity as a lender and an investor), and should therefore not be permitted to evade disqualification on the basis that he also wore the hat of attorney in the transaction about which he will testify.  "For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence." *Jaffee v. Redmond,* 518 U.S. 1, 9 (1996) (internal quotation marks and citations omitted).  A lawyer testifying as a fact witness is not entitled to any special treatment or protection from being called as a fact witness that the "necessary" standard would afford.

### III.  DISCUSSION

The Court is sensitive to the Defendants' right to choose their own counsel, but Greene's personal involvement in the Transfer underlying this Adversary Proceeding amounts to one of the infrequent instances where the attorney's representation of his client presents a significant risk of trial taint.  The Court finds that the Trustee has met his burden in establishing that there

12

are at least two grounds warranting Greene's and Robinson Brog's disqualifications. Since Greene's financial interest will be directly impacted by the outcome of the Adversary Proceeding, he holds a pecuniary stake in the outcome of the case warranting both his disqualification under Rule 1.8(i) and Robinson Brogs's disqualification under Rule 1.10(a). The Court further finds that Greene's and Robinson Brogs' disqualifications are independently warranted under Rule 3.7(b). While Greene's deposition has not yet been taken in this case, documents provided to the Court in connection with the Motion support that Greene will likely be called to testify concerning his role as a lender and investor in New SMG, and there is a substantial likelihood his testimony would be prejudicial to the Defendants.

### A. Greene is Disqualified Pursuant to Rule 1.8(i) Because of His Proprietary Interest in the Subject Matter of the Adversary Proceeding

Greene's approximate 4% ownership stake in New SMG warrants his disqualification under Rule 1.8(i). There is no dispute that Greene advanced $550,000 of his own money to make a short-term loan to New SMG to facilitate the Transfer, purchased an ownership stake in New SMG, and continues to own New SMG equity. (10/5 Hearing Tr. 10:9–12; 28:5–16, ECF Doc. # 71.) Since the outcome of the Adversary Proceeding will necessarily impact directly Greene's personal financial interest, Greene has "acquire[ed] a proprietary interest in the . . . subject matter of litigation that [Greene] is conducting for [the Defendants]," barring his representation of the Defendants under Rule 1.8(i). *See, e.g., Peggy Walz, Inc.*, 1996 WL 88556, at *2 (disqualifying an attorney who had an incorporation agreement with his client that provided him with an option to loan the client funds and entitled him to 40% of revenues, and noting that "it is obvious that [the attorney] has a significant proprietary interest in this action and the subject matter underlying it"). Disqualification to prevent Greene's "property rights" and "self interest" from affecting his "exercise of independent [and] professional judgment" (*see* Rule

13

1.8(i), cmt. 3A) applies with great force here, where Greene's conduct during discovery appears to have already borne out the risks of an attorney whose personal interests are at stake in a litigation.  For example, Roninson Brog has improperly withheld documents throughout discovery, has made several threats to the Trustee, and has withheld critical information about Greene's interest in the Transfer.  (Mot. at 17.)  As the Court noted during the October 4, 2017 hearing on the Motion, the Court did not base its disqualification decision on the discovery disputes raised by the parties (10/5 Hearing Tr. 26:19–21, ECF Doc. # 71), but these lapses in judgment during discovery nonetheless indicate that Greene's personal involvement in the Transfer presents the risk of trial taint.

Robinson Brog's assertions that Greene should not be disqualified because (i) at the time of the Transfer Greene represented third-party Bond Street and not New SMG, (ii) Greene's loan and purchase of equity occurred before Robinson Brog represented New SMG in the Adversary Proceeding, and (iii) Greene will not serve as trial counsel for New SMG (Opp. at 19–22) are beside the point and belied by the text of Rule 1.8(i).  The drafters of Rule 1.8 did not limit its application to trial counsel, and the rule provides guidance with respect to conflicts that arise with *current* clients (indeed, the title of Rule 1.8 is "Current Clients: Specific Conflict of Interest Rules").  The inquiry for the Court is thus whether an attorney's interests are currently conflicted by a pecuniary interest.  Here, since Greene *currently* represents the Defendants, and *currently* holds equity in a Defendant, his interests are conflicted under the rule.

### B. Robinson Brog is Disqualified Pursuant to Rule 1.10(a) Because Greene's Rule 1.8(i) Conflict is Imputed to Robinson Brog

Greene's conflict is imputed to Robinson Brog under Rule 1.10(a), which explicitly states that "[w]hile lawyers are associated at a firm, none of them shall knowingly represent a client when one of them doing so practicing alone would be prohibited from doing so by . . . Rule

14

1.8[.]" 22 N.Y.C.R.R. § 1200, Rule 1.10(a). Application of this rule is especially appropriate here because there is a significant risk that other attorneys at Robinson Brog may feel undue pressure during their representation of the Defendants to remain loyal to Greene, given Greene's prominent role at Robinson Brog as a member of the Firm's Board and its Executive Committee. *See, e.g.*, *Cohen v. Strouch*, 2011 WL 1143067, at *2 (S.D.N.Y. Mar. 24, 2011) (explaining that "[w]hen a conflict of interest is found, an attorney's conflicts are ordinarily imputed to his firm based on the presumption that associated attorneys share client confidences") (internal citation and quotation marks omitted). This concern is magnified by the fact that Greene's own conduct is implicated in the Adversary Proceeding, and others in the firm could be called upon to testify about documents that Greene received, such as the summary of the Transfer sent to Greene, stating that the business assets to be transferred generated approximately $70 million in revenue. (Thara Decl. Ex. 1.)

### C.    Greene and Robinson Brog are Disqualified Pursuant to Rule 3.7

The disqualifications of Greene and Robinson Brog are also appropriate for the independent reason that there is a substantial likelihood that Greene will be called upon to testify in the Adversary Proceeding concerning the Transfer, and that his testimony will be prejudicial to the Defendants. Rule 3.7(a) states that "[a] lawyer shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." 22 N.Y.C.R.R. § 1200, Rule 3.7(a). Here, Greene will likely be a witness on a central factual issue in the Adversary Proceeding: whether the consideration for the Transfer was adequate. For example, the Defendants may argue that the value of the business assets transferred declined before the closing of the Transaction, and Greene may be called to testify concerning why he nevertheless chose to provide a loan to facilitate the Transfer. Robinson Brog's argument that

15

Greene is not trial counsel in the Adversary Proceeding fails because the rule does not specify that the conflict is limited to trial counsel, and, as Robinson Brog itself acknowledges, Rule 3.7 is designed to protect against the concern that "the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility," a concern that would likely be present here *Murray*, 583 F.3d at 178 (citations omitted), a concern that would likely be present here.  Robinson Brog's argument that Greene's testimony will not be harmful to the Firm's client likewise fails.  Robinson Brog asserts that Greene's testimony would benefit the client because "at the time of the . . . Transaction, the assets were worth very little and the purchase price reflected that.  Greene's loan helped the new entity-SMG-repair the damage wrought by CRS's mismanagement and tax evasion, and his investment reflected confidence in the new management team." (Opp. at 25.)  But since the Trustee contends that Greene improperly withheld documents concerning SMG's contemporaneous opinion of the Transfer (Mot. at 9), Greene may be asked to testify regarding why these documents were withheld, and more importantly, will likely be called to testify about the content of the documents themselves, as he is a recipient of at least one of the documents which appears to support the Trustee's claim that the sale was at a bargain price (*i.e.*, a summary of the Transfer addressed to Greene by an SMG principal eight days before the Transaction closed).  Understanding that New York courts apply "fairly strict scrutiny" to disqualification motions under Rule 3.7, the Court nevertheless finds that disqualification is warranted because Greene's role as a likely fact witness in this case presents a significant risk of prejudice to the Defendants, and of trial taint.

### IV. CONCLUSION

For the reasons discussed above, the Court previously granted the Trustee's Motion to disqualify Greene and Robinson Brog as attorneys for the Defendants in this Adversary Proceeding.

On October 18, 2017, Robinson Brog and Greene moved for a stay of the Disqualification Order pending appeal. (ECF Doc. # 73.) The Court believes that the appeal lacks merit and a stay will delay the progress of this case. Under the current Seventh Amended Case Management and Scheduling Order, fact discovery is scheduled to be completed by November 17, 2017. (ECF Doc. # 40, ¶ 1(a).) Some extension of discovery may be required to permit new counsel to get up-to-speed, but further delay would prejudice the Trustee in seeking expeditiously to resolve this adversary proceeding. The Court will nevertheless stay the disqualification order for a period of seven (7) days from the date of this Opinion to permit the disqualified counsel to apply to the District Court for a further stay.

With respect to the stay motion (ECF Doc. # 73), **IT IS HEREBY ORDERED** that the Court grants a seven (7) day stay of the Disqualification Order from the date of this Opinion**.**

Dated: October 20, 2017
      New York, NY

                         *Martin Glenn*
                        MARTIN GLENN
                United States Bankruptcy Judge